UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| JAMIE BOWEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAVIA BENEFIT SOLUTIONS, INC.,<br><br>Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY DEMAND |

Plaintiff Jamie Bowen ("Plaintiff"), on behalf of herself, and all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Navia Benefit Solutions, Inc. ("Defendant"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

**INTRODUCTION**

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable

Information ("PII")[1] and Protected Health Information ("PHI") (collectively, "Private Information") that was impacted in a data breach (the "Data Breach" or the "Breach").

2. Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it and its accompanying responsibility to store and transfer that information.

3. Defendant is a Washington-based third-party administrator of employee benefits. Defendant provides administration for programs such as Flexible Spending Arrangements (FSA), Dependent Care Assistance Programs (DCAP), commuter benefits, and other employee benefit services. Defendant is headquartered in Renton, Washington.

4. Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5. On January 23, 2026, Defendant discovered suspicious activity related to its IT Network. In response, Defendant launched an investigation to confirm the nature and scope of the Data Breach.[2]

6. Defendant's investigation determined that an unauthorized actor accessed and potentially acquired certain information between December 22, 2025, and January 15, 2026.[3]

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] *Notice of Data Event*, Navia Benefit Solutions, Inc., https://www.naviabenefits.com/notice-of-data-event/ (last visited Mar. 19, 2026).

[3] *Id.*

7. Defendant's investigation determined that the following types of Private Information were potentially compromised as a result of the Data Breach: name, date of birth, Social Security number, phone number, email address, and health plan information for impacted individuals.[4]

8. Defendant failed to take precautions designed to keep individuals' Private Information secure.

9. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

10. The Private Information potentially compromised in the Data Breach contained highly sensitive data, representing a gold mine for data thieves. The data included, but is not limited to, Social Security numbers and sensitive health plan information that Defendant collected and maintained on behalf of Plaintiff and Class Members.

11. Armed with Private Information of the type accessed in the Data Breach, data thieves can commit a variety of crimes including, e.g., opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, and giving false information to police during an arrest.

[4] *Id.*

12. Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

13. Plaintiff brings this class action lawsuit to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and its failure to provide timely and adequate notice to affected individuals, including Plaintiff and Class Members, of the Breach and the types of information unlawfully accessed.

14. The potential for improper disclosure and theft of Plaintiff and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

15. Upon information and belief, Defendant failed to properly monitor and implement security practices with regard to the computer network and systems that housed the Private Information. Had Defendant properly monitored its IT Network, it would have discovered the Breach sooner.

16. Plaintiff and Class Members' identities are now at risk because of Defendant's negligent conduct as the Private Information that Defendant collected and maintained was accessed and potentially acquired by unauthorized third parties.

17. Plaintiff seeks to remedy these harms on behalf of herself, and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

18. Accordingly, Plaintiff, on behalf of herself and the Class, asserts claims for negligence, unjust enrichment, breach of implied contract, and violations of the Washington State Consumer Protection Act.

## PARTIES

**Plaintiff**

19. Plaintiff Jamie Bowen is a natural person and citizen and resident of Boise, Idaho where she intends to remain.

**Defendant**

20. Defendant is a Washington corporation that maintains its principal place of business at 707 S. Grady Way, Suite 350, Renton, Washington 98057. Defendant is a third-party administrator that specializes in employee benefits services and is headquartered in Renton, Washington.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of Class Members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A). Defendant has its principal place of business located in this District.

22. This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in this District.

23. Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

24. Defendant is a Washington-based third-party administrator of employee benefits. Defendant provides administration for programs such as Flexible Spending Arrangements (FSA), Dependent Care Assistance Programs (DCAP), commuter benefits, and other employee benefit services.[5]

25. As a condition of doing business, Defendant requires that individuals entrust it with highly sensitive personal information. In the ordinary course of receiving services from Defendant, Plaintiff and Class Members were required to provide their Private Information to Defendant.

26. Upon information and belief, Defendant made promises and representations to individuals, including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.[6]

27. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant

---

[5] *About Us*, Navia Benefit Solutions, Inc., https://www.naviabenefits.com/about/ (last visited Mar. 19, 2026)

[6] *Privacy Policy and Notice,* Navia Benefit Solutions, Inc., https://www.naviabenefits.com/privacy-policy-and-notice/ (last visited Mar. 19, 2026).

would comply with its obligations to keep such information confidential and secure from unauthorized access.

28. As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' Private Information from disclosure to third parties.

**B. The Data Breach**

29. On January 23, 2026, Defendant discovered suspicious activity related to its IT Network. In response, Defendant launched an investigation to confirm the nature and scope of the Data Breach.[7]

30. Defendant's investigation determined that an unauthorized actor accessed and potentially acquired certain information between December 22, 2025, and January 15, 2026.[8]

31. Defendant's investigation determined that the following types of Private Information were potentially compromised as a result of the Data Breach: name, date of birth, Social Security number, phone number, email address, and health plan information for impacted individuals.[9]

32. Defendant failed to take precautions designed to keep individuals' Private Information secure.

[7] *Notice of Data Event*, Navia Benefit Solutions, Inc., https://www.naviabenefits.com/notice-of-data-event/ (last visited Mar. 19, 2026)
[8] *Id.*
[9] *Id.*

33. Defendant had obligations created by the FTC Act, HIPAA, contract, common law, and industry standards to keep Plaintiff and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

34. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

35. The Data Breach resulted in an unauthorized third party accessing and potentially acquiring files containing unencrypted Private Information of Plaintiff and Class Members.

36. Upon information and belief, the Private Information accessed in the Data Breach is at substantial risk of being disseminated, sold, or otherwise misused on the dark web or other criminal channels, as that is the modus operandi of cybercriminals that commit cyber-attacks of this type.

37. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

38. According to a filing with the Maine Attorney General's Office, approximately 2,697,540 individuals were affected by the Data Breach.[10]

**C. Defendant's Collection and Storage of Private Information**

[10] Navia Benefit Solutions, Inc., Maine Attorney General Data Breach Notifications, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/584caa6c-4397-49c0-89a5-dbc0dbea0948.html (last visited Mar. 19, 2026).

39. As a condition to obtain services from Defendant, Plaintiff and Class Members were required to give their sensitive and confidential Private Information to Defendant.

40. Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class Members' Private Information, Defendant would be unable to perform its services.

41. At all relevant times, Defendant knew it was storing sensitive Private Information and that, as a result, its system would be an attractive target for cybercriminals.

42. Defendant also knew that a breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised, as well as intrusion into their highly private health information.

43. Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class Members.

44. Upon information and belief, Defendant made promises to Plaintiff and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

45. Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**D. Defendant Knew or Should Have Known of the Risk of a Cyberattack**

46. Data thieves regularly target entities like Defendant due to the highly sensitive information that they maintain. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

47. Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting entities like Defendant that collect and store Private Information and other sensitive information, preceding the date of the Data Breach.

48. In light of recent high-profile data breaches at other industry-leading companies, Defendant knew or should have known that the Private Information that it collected and maintained would be targeted by cybercriminals.

49. In 2024, 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records, a 211% increase year-over-year.[11]

50. Entities in custody of PHI and/or medical information reported the largest number of data breaches among all measured sectors in 2022, with the highest rate of exposure per breach.[12] Indeed, when compromised, healthcare-related data is among the most sensitive and personally consequential.

51. Indeed, cyberattacks on medical systems and healthcare and healthcare-adjacent companies like Defendant have become so notorious that the FBI and U.S. Secret

[11] 2024 Data Breach Annual Report, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last visited Mar. 19, 2026).
[12] See Identity Theft Resource Center, 2022 Annual Data Breach Report, https://www.idtheftcenter.org/publication/2022-data-breach-report/ (last visited Mar. 19, 2026).

Service have issued warnings to potential targets, so they are aware of, and prepared for, a potential attack.[13]

52. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

53. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

54. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

55. The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long-lasting and severe. Once Private Information is accessed and potentially acquired by unauthorized actors, fraudulent use of that information and damage to victims may continue for years.

56. As an entity in possession of individuals' Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiff and Class Members because of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

**E. Defendant Fails to Comply with FTC Guidelines**

---

[13] Secret Service Warn of Targeted, LAW360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited Mar. 19, 2026).

57. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

58. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses.[14] These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

59. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[15]

60. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

61. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer

[14] Protecting Personal Information: A Guide for Business, FEDERAL TRADE COMMISSION (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Mar. 19, 2026).
[15] *Id.*

data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. These FTC enforcement actions include actions against entities that fail to adequately protect individuals' data.[16]

62. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

63. Defendant failed to properly implement basic data security practices.

64. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

65. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of Plaintiff and Class Members; Defendant was also aware of the significant repercussions that would result from its failure to do so.

**F. Defendant Fails to Comply with HIPAA Guidelines**

66. Upon information and belief, Defendant acted as a business associate and/or otherwise handled protected health and benefits-related information subject to HIPAA and related data-security obligations, including the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A, C, and E.

---

[16] *See, e.g., In the Matter of LabMD, Inc.*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016).

67. Defendant is also subject, upon information and belief, to the rules and regulations for safeguarding electronic forms of medical and health-benefits information pursuant to the Health Information Technology Act ("HITECH"). See 42 U.S.C. §17921, 45 C.F.R. § 160.103.

68. HIPAA's Privacy Rule establishes national standards for the protection of health information.

69. HIPAA's Security Rule establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

70. HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

71. HIPAA's Security Rule requires covered entities and their business associates to, among other things:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the entity creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

72. HIPAA also requires entities handling protected health information to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

73. HIPAA and HITECH also obligate such entities to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic PHI that are reasonably anticipated but not permitted by the privacy rules. See 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); see also 42 U.S.C. §17902.

**G. Defendant Fails to Comply with Industry Standards**

74. Experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

75. Several best practices have been identified that at a minimum should be implemented by entities in possession of PII and PHI, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Upon information and belief, Defendant failed to follow these industry best practices.

76. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 and applicable security-rule requirements.

77. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

78. Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees and others who accessed Private Information within its computer systems.

79. Defendant owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Private Information in a timely manner.

80. Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

81. Defendant owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

82. Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

**H. The Harms Caused by the Data Brech**

83. Upon information and belief, the unencrypted Private Information of Plaintiff and Class Members is at substantial risk of being disseminated and sold to criminals on the dark web, as that is the modus operandi of hackers who commit targeted cyberattacks of this nature.

84. Simply put, unauthorized individuals can access and misuse the Private Information of Plaintiff and Class Members because of the Data Breach.

85. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and access Private Information to monetize the information. Criminals monetize the data by selling the information on the black market to

other criminals who then utilize the information to commit a variety of identity theft–related crimes.

86. Plaintiff's and Class Members' Private Information is of great value to hackers and cyber criminals, and the data accessed in the Data Breach may be used in a variety of ways for criminals to exploit Plaintiff and Class Members and to profit from their misfortune.

87. As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Private Information is used;

b. The diminution in value of their Private Information;

c. The compromise and potential continuing dissemination of their Private Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach;

f. Unauthorized use of their Private Information; and

g. The continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Private Information in its possession.

88. Identity thieves can use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[17]

89. Further, an individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective.[18]

90. Defendant's failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

91. As a result of the recognized risk of identity theft, when an individual learns that their Private Information was compromised in a data breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud.

92. Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate the risk of identity theft.

---

[17] *See* Federal Trade Commission, IdentityTheft.gov, https://www.identitytheft.gov/Steps (last visited Mar. 19, 2026).

[18] Brian Naylor, Victims of Social Security Number Theft Find It's Hard to Bounce Back, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.

93. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords and resecuring their own computer systems.

94. Private Information is valuable property. Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences.[19]

95. The Private Information compromised in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. The information compromised in the Data Breach is difficult, if not impossible, to change.

96. As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized access.

97. The fraudulent activity resulting from the Data Breach may not come to light for years.

98. Given the type of targeted attack in this case, the sophisticated criminal activity, the volume of data compromised in this Data Breach, and the sensitive type of Private Information involved, there is a strong probability that entire batches of the accessed information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals.

[19] See United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown, at 2 (June 2007), https://www.gao.gov/new.items/d07737.pdf.

99. Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

100. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft resulting from Defendant's Data Breach.

101. Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to use Defendant's services, Plaintiff and other reasonable individuals understood and expected that they were, in part, paying for the service and necessary data security to protect the Private Information when, in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected.

**I. Plaintiff Jamie Bowen's Experience**

102. Plaintiff Jamie Bowen is a customer and participant of Defendant's benefits programs. Plaintiff maintained an active Navia account with a debit-card-linked benefits product.

103. Plaintiff provided Defendant with Private Information in connection with her Navia-administered benefits relationship. Upon information and belief, Defendant maintained additional Private Information about Plaintiff of the types identified in Navia's public breach notice, including name, date of birth, Social Security number, phone number, email address, and health plan information.

104. Upon information and belief, Defendant was in possession of Plaintiff's Private Information before, during, and after the Data Breach.

105. Plaintiff reasonably understood and expected that Defendant would safeguard her Private Information and timely and adequately notify her in the event of a data breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's position, to maintain her Private Information if she believed that Defendant would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

106. Plaintiff greatly values her privacy and Private Information and takes reasonable steps to maintain the confidentiality of her Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

107. Plaintiff stores any and all documents containing Private Information in a secure location and destroys any documents she receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise her identity and accounts.

108. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

109. Plaintiff learned of the Data Breach through Defendant's public disclosure in March 2026.[20] Plaintiff has not received, or is not aware of receiving, any individualized breach notification from Defendant, despite maintaining an active account with Defendant.

110. As a result of learning of the Data Breach, Plaintiff has spent several hours researching the Data Breach, reviewing her bank accounts, monitoring her credit report, changing her passwords, contacting her bank, signing up for credit monitoring services,

[20] *Notice of Data Event*, Navia Benefit Solutions, Inc., https://www.naviabenefits.com/notice-of-data-event/ (last visited Mar. 19, 2026).

and engaging in other necessary mitigation efforts. This is valuable time that Plaintiff would have spent on other activities, including but not limited to work and/or recreation.

111. As a consequence of and following the Data Breach, Plaintiff has experienced a significant increase in spam calls and spam emails, evidencing misuse of her Private Information.

112. Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

113. Plaintiff has a continuing interest in ensuring that her Private Information, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

114. As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after her Private Information was compromised in the Data Breach, including, but not limited to:

a. lost time and money related to monitoring her accounts and credit reports for fraudulent activity;

b. loss of privacy due to her Private Information being accessed by unauthorized third parties;

c. loss of the benefit of the bargain because Defendant did not adequately protect her Private Information;

d. emotional distress arising from the knowledge that her sensitive Private Information was accessed by unauthorized actors;

e. imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been accessed and potentially acquired by unauthorized third parties;

f. diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff; and

g. other economic and non-economic harm.

## CLASS ALLEGATIONS

115. Plaintiff brings this class action, individually and on behalf of the following Nationwide Class:

> All individuals whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach (the "Class").

116. Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

117. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

118. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

119. **Numerosity:** The Class is so numerous that joinder of all Class Members is impracticable. Upon information and belief, approximately 2,697,540 individuals were affected by the Data Breach. The Class is sufficiently numerous to warrant certification.

120. **Typicality of Claims:** Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her

claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

121. **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

122. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein.

123. **Predominant Common Questions:** The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c. Whether Defendant's storage of Plaintiff and Class Members' Private Information was done in a negligent manner;

d. Whether Defendant had a duty to protect and safeguard Plaintiff and Class Members' Private Information;

e. Whether Defendant's conduct was negligent;

f. Whether Defendant's conduct violated Plaintiff and Class Members' privacy;

g. Whether Defendant took sufficient steps to protect individuals' Private Information;

h. Whether Defendant was unjustly enriched; and

i. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

124. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant.

125. Given that Defendant has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### Negligence
(On behalf of Plaintiff and the Nationwide Class)

126. Plaintiff restates and realleges all of the foregoing allegations as if fully set forth herein.

127. Defendant knowingly collected, possessed, and maintained Plaintiff and Class Members' Private Information, and therefore had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, and misused by unauthorized parties.

128. Defendant's duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

129. Defendant knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security.

130. Defendant owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Defendant's duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b. To protect the Private Information in its possession by using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to applicable federal and state law;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

131. Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce."

132. Defendant's duty also arose because Defendant was bound by industry standards to protect the confidential Private Information entrusted to it.

133. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.

134. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff and Class Members' Private Information within Defendant's possession.

135. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of its networks and systems;

c. Failing to periodically ensure that its systems maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' Private Information;

e. Failing to comply with applicable federal and state data security laws;

f. Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

g. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

136. Defendant had a special relationship with Plaintiff and Class Members. Plaintiff and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions.

137. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff and Class Members' Private Information to be compromised, as alleged herein.

138. Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiff and Class Members' Private Information and promptly notify them about the Data Breach.

139. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

140. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

141. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

142. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, inter alia, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT II**
**Breach of Implied Contract**
(On Behalf of Plaintiff and the Nationwide Class)

143. Plaintiff restates and realleges all of the foregoing allegations as if fully set forth herein.

144. Plaintiff and Class Members were required to deliver their Private Information to Defendant as part of the process of obtaining services from Defendant. Plaintiff and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services and would not have paid for Defendant's services, or would have paid less for them, had they known that Defendant's data security practices were substandard.

145. Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

146. Defendant accepted possession of Plaintiff and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

147. Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised.

148. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

149. Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

150. On information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relates to the Data Breach.

151. Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

152. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

153. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

154. Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, and by failing to provide accurate and timely notice to them that personal information was compromised as a result of the Data Breach.

155. As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) compromise of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) nominal damages; and (vii) the continued and certainly increased risk to their Private Information.

156. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

157. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT III**
**Unjust Enrichment**
(On behalf of Plaintiff and the Nationwide Class)

158. Plaintiff restates and realleges all of the foregoing allegations as if fully set forth herein.

159. This Count is pleaded in the alternative to Count II above.

160. Plaintiff and Class Members conferred a benefit on Defendant by providing their Private Information to Defendant. Moreover, upon information and belief, Plaintiff alleges that payments made to Defendant included payment for cybersecurity protection to protect Plaintiff and Class Members' Private Information, and that those cybersecurity costs were passed on to Plaintiff and Class Members in the form of elevated prices charged by Defendant for its services. Plaintiff and Class Members did not receive such protection.

161. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made to it by Plaintiff and Class Members.

162. Defendant has retained the benefits of its unlawful conduct, including the amounts of payment received indirectly from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

163. Defendant knew that Plaintiff and Class Members conferred a benefit upon it, which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures.

164. If Plaintiff and Class Members had known that Defendant had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

165. Due to Defendant's conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant to be permitted to retain the benefit of its wrongful conduct.

166. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

167. Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT IV**
**Violations of the Washington State Consumer Protection Act, RCW 19.86.010 et seq.**
(On Behalf of Plaintiff and the Nationwide Class)

168. Plaintiff restates and realleges all of the foregoing allegations as if fully set forth herein.

169. The Washington Consumer Protection Act, RCW 19.86.020 (the "CPA") prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as those terms are described by the CPA and relevant case law.

170. Defendant is a "person" as described in RCW 19.86.010(1).

171. Defendant engages in "trade" and "commerce" as described in RCW 19.86.010(2) in that it engages in the sale of services and commerce directly and indirectly affecting the people of the State of Washington.

172. Defendant is headquartered in Washington; its strategies, decision-making, and commercial transactions originate in Washington; most if not all of its key operations and employees reside, work, and make company decisions (including data security decisions) in Washington; and Defendant and many of its employees are part of the people, residents, and citizens of the State of Washington.

173. In the course of conducting its business, Defendant committed "unfair acts or practices" by, among other things, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class Members' Private Information.

174. Defendant's conduct was also deceptive. Defendant failed to timely notify and concealed from Plaintiff and Class Members the unauthorized access to and potential acquisition of their Private Information. If Plaintiff and Class Members had been notified in an appropriate fashion, and had the information not been hidden from them, they could have taken earlier and more robust precautions to safeguard and protect their Private Information and identities.

175. Defendant's "unfair or deceptive acts or practices" affect the public interest because they are substantially injurious to persons, they had the capacity to injure other persons, and they have the capacity to injure other persons.

176. The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in its wrongful conduct.

177. Defendant's unfair and deceptive acts and practices directly and proximately caused injury to Plaintiff and Class Members' businesses and property. Plaintiff and Class Members have suffered, and will continue to suffer, actual damages and injury in the form of, among other things, (1) an imminent, immediate and the continuing increased risk of identity theft, identity fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (2) invasion of privacy; (3) breach of the confidentiality of their Private Information; (4) deprivation of the value of their Private Information; (5) the financial and temporal cost of monitoring credit, monitoring financial accounts, and mitigating damages; and/or (6) investment of substantial time and money to monitoring and remediating the harm inflicted upon them.

178. Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of herself, Class Members, and the general public, also seeks restitution and an injunction prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to modify its corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Private Information.

179. Plaintiff, on behalf of herself and the Class, also seeks to recover actual damages sustained by each Class Member together with the costs of the suit, including reasonable attorneys' fees. In addition, Plaintiff, on behalf of herself and the Class, requests an increase in the damages award for each Class Member to three times the actual damages sustained, not to exceed $25,000.00 per Class Member.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Class described above, seeks the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is the proper representative of the Nationwide Class requested herein;

b. Judgment in favor of Plaintiff and Class Members awarding appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: March 19, 2026

Respectfully Submitted,

*<u>/s/ Andrew A. Lemmon</u>*
Andrew A. Lemmon, WSBA #53034
Scott J. Falgoust*
**BRYSON HARRIS SUCIU & DEMAY PLLC**
5301 Canal Boulevard
New Orleans, LA 70124
(919) 585-5634
alemmon@brysonpllc.com
sfalgoust@brysonpllc.com

*Attorneys for Plaintiff and the Proposed Class*

**Pro hac vice forthcoming*